**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| REYNALDO SEGURA, | ) No. ED CV 15-1311 AS |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION AND** |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social | ) **ORDER OF REMAND** |
| Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

## I. PROCEEDINGS

In 2011, Plaintiff Renaldo Segura ("Plaintiff") applied for disability insurance benefits based on a disabling condition beginning December 15, 2008. (AR 69, 205, 290). On September 4, 2013, Administrative Law Judge ("ALJ") Joseph D. Schloss heard

1

testimony from Plaintiff, medical expert ("M.E.") Dr. Anthony J. Francis, and vocational expert ("V.E.") Joseph H. Torres. (AR 36-58). On September 19, 2013, the ALJ denied Plaintiff benefits in a written decision. (AR 20-30). The Appeals Council denied review of the ALJ's decision. (AR 1-4).

On July 2, 2015, Plaintiff filed a Complaint pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) alleging that the Social Security Administration erred in denying benefits. (Docket Entry No. 1). On November 4, 2015, Defendant filed an Answer to the Complaint, (Docket Entry No. 12), and the Certified Administrative Record ("AR"), (Docket Entry No. 13). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 9, 10). On March 8, 2016, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions on Plaintiff's claims. (Docket Entry No. 17).

## II. SUMMARY OF TESTIMONY AND ALJ'S DECISION

At the September 4, 2013 hearing, the M.E. testified that Plaintiff suffered from lumbar and sacral radiculopathy on or about the alleged onset date, underwent fusion surgery in 2010, and continued to suffer from "persistent radiculopathy" after that. (AR 40-41). The M.E. noted that Plaintiff was injured in August 2008 while lifting heavy rebar, which caused lumbar radiculopathy and a herniated nucleus pulposus (disc). (AR 40). Plaintiff had one steroid injection that afforded him relief for about a week. (AR 40). In 2013, Plaintiff was "a candidate for a spinal cord

stimulator." (AR 41).  The M.E. stated that there were "no opinions" in Plaintiff's records that Plaintiff could not work, but cases involving "failed spinal surgery" severe enough to merit spinal cord stimulation are generally cases in which the claimant's impairments meet Listing 1.04A, Disorders of the Spine.  (See AR 42).  The M.E. opined that Plaintiff would probably be unable to work at a sedentary level because his was a "failed spinal surgery case with a continued radiculopathy," although the M.E. also stated that he was unable to point to "something in this case that says" that Plaintiff was unable to work.  (AR 43).

Plaintiff then testified as follows: he has "problems" bending, stooping, sitting for a long time, standing, walking, reaching, pushing, and pulling.  (AR 44).  He has pain in his lower back and all the way down his legs and numbness in his left foot.  (AR 44). Plaintiff's "daily routine" involves washing dishes, but even the "little bit of pivoting" involved in washing dishes causes his back to "turn[] into a pretzel."  (AR 44).  He then has to sit down for a while and "ice it" but he cannot sit very long because his legs "start to pinch," and the "pinch" is "an ongoing thing all day long any time [he does] something."  (AR 44).  Plaintiff can sit for between five and thirty minutes before needing to stand: about four days of the week, he can only sit for about ten minutes.  (AR 45-46). Plaintiff can stand for thirty minutes or walk about two blocks before needing to rest for thirty to sixty minutes.  (AR 46-47).

Plaintiff can clean his bathtub, toilet, counter, and sinks for about twenty minutes before needing to sit for about an hour to apply

ice or heat.  (AR 47).  About once a week, Plaintiff's pain is severe enough that his wife has to help him dress.  (AR 47).  Plaintiff can bend enough to touch his knees without difficulty and lift twenty pounds, although not repeatedly, without injury.  (AR 48).  Plaintiff gets five hours of sleep per night and naps thirty minutes or an hour every day.  (AR 49).  Plaintiff drives for thirty minutes about twice a week.  (AR 53).  Plaintiff has taken medication, including hydrocodone, for his pain; the medication "cloud[s]" his pain but does not "take it away," and it makes him constipated, sick to his stomach, irritable, and depressed.  (AR 50).

In response to hypotheticals posed by the ALJ, the V.E. testified that there were jobs existing in significant numbers in the national economy for: (1) a forty-six-year-old individual limited to a complete range of light work; and (2) a person able to perform a complete range of sedentary work except "no ladders, ropes or scaffolds; no working at heights; no vibratory tools or instruments; no dangerous, moving machinery; no unprotected heights . . . can stand and walk 30 minutes at a time, for a total of 6 hours in each category; can sit 6 hours, 30 minutes at a time; and can lift and carry ten pounds occasionally, frequently less than ten pounds; push and pull is occasional with the lower extremities; no limitations on the upper extremities; occasionally can climb ramps, stairs, bend stoop, kneel, crouch; no squatting and no crawling."  (AR at 55-57).

The ALJ applied the five-step process in evaluating Plaintiff's case.  (AR 20-22).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the alleged

onset date.  (AR 22).  At step two, the ALJ found that Plaintiff had the following severe impairment: lumbar radiculopathy status post fusion.  (AR 22).  The ALJ found Plaintiff's obesity and depression to be non-severe.  (AR 23).  At step three, the ALJ found that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 24).

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations: able to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk for a total of six hours in an eight-hour workday with customary breaks, but no more than 30 minutes at a time; sit for a total of six hours in an eight-hour workday with customary breaks, but no more than 30 minutes at a time; and push and/or pull with the lower extremities on an occasional basis with his lower extremities within the weight limits provided for lifting and/or carrying, but no limitations on pushing and/or pulling with the bilateral upper extremities; occasional climbing of ramps and stairs; occasional bending, stooping, kneeling, or crouching; no squatting, crawling, or climbing ladders, ropes, or scaffolds; no working at unprotected heights, around dangerous and/or moving machinery, or with vibratory tools or instruments.  (AR 24).  In making this finding, the ALJ found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms, Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not entirely credible.  (AR 25).

At steps four and five, the ALJ determined that Plaintiff could not return to his past work, but he could perform jobs existing in significant numbers in the national economy, including that of assembler and table worker. (AR 28-30). The ALJ accordingly determined that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 30).

### III. STANDARD OF REVIEW

This court reviews the Commissioner's decision to determine if the decision is free of legal error and supported by substantial evidence. See Brewes v. Commissioner of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

\\
\\
\\
\\
\\

6

**IV. PLAINTIFF'S CONTENTIONS**

Plaintiff contends that the ALJ improperly considered his testimony and improperly found him not credible. (Joint Stip. at 3-12).

**V. DISCUSSION**

After reviewing the record, the Court finds that Plaintiff's claim warrants a remand for further consideration.

**A.  The ALJ Erred in Rejecting Plaintiff's Testimony as Not Credible**

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of his subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen, 80 F.3d at 1281; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In this case,

7

because there is no evidence of malingering, the "clear and convincing reasons" standard applies.

The ALJ gave the following reasons for finding Plaintiff's testimony not credible:

> [Plaintiff] testified he is unable to engage in work activity due to his back pain and numbness in his feet. He alleged he has difficulties with bending, stooping, pushing, pulling, and sitting and walking for a prolonged period despite ongoing treatment. He contended even simple chores, such as washing the dishes[,] cause back pain. He asserted that he is able to sit for about 15 minutes and walk for about 30 minutes at a time.  At the same time, he admitted he can mop, clean bathtubs and toilets, wash the dishes, and drive.
>
> The [ALJ] has read and considered the Exertion Questionnaire, completed by [Plaintiff] in [sic] December 27, 2011. [Plaintiff] alleged he has difficulties with bending and stooping, and that he is unable to walk for a prolonged period due to his back pain. Yet, he admitted he is able to perform household chores, shop, and drive.
>
> After careful consideration of the evidence, the [ALJ] finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity,

8

persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. [. . .]

[Plaintiff's] treatment notes show that he sustained a work-related injury in August of 2008 when he felt a pinch in his left lower extremity while squatting and lifting off the ground. . . . [Plaintiff] was treated conservatively with physical therapy, chiropractic adjustments, and epidural injections. However, when conservative treatment failed, he underwent a fusion surgery in July of 2010.

Even after the surgery, he made persistent complaints of pain, tingling, and numbness in his legs. However, findings from the physical examinations were generally benign. . . . [Plaintiff's] treating chiropractor indicated that [Plaintiff] would be treated with chiropractic adjustments, physical therapy, and oral medications.

Recent physical examinations revealed improvement in [Plaintiff's] symptoms. . . . In fact, [Plaintiff] reported that he stopped taking oral medications for pain relief. Yet, his doctor suggested [a] spinal cord stimulator trial, although it is unclear if [Plaintiff] did in fact undergo a spinal cord stimulator trial.

In February of 2012, Robert Nguyen, M.D., conducted a complete consultative internal medicine evaluation of

[Plaintiff]. A physical examination revealed the range of motion of [Plaintiff's] back was restricted and that he was unable to stretch his legs in a supine position. Otherwise, findings from the physical examination were within normal limits.

In arriving at a decision, the [ALJ] must assess the credibility of each person who gives evidence, either by testimony during the hearing or by pre-hearing statements or reports. When the [ALJ] assess each person's credibility, the [ALJ] considers a number of factors and utilize [sic] those factors that are relevant to his claim and that are applicable to his credibility. As a result, the [ALJ] finds the [Plaintiff's] allegations are less than fully credible.

Despite his impairments, [Plaintiff] has engaged in a somewhat normal level of daily activity and interaction. [Plaintiff] admitted activities of daily living, including performing household chores, such as cleaning the bathtub, cleaning the toilet, and mopping; shopping; and driving. Some of the physical and mental abilities and social interactions required to perform these activities are the same as those necessary for obtaining and maintaining employment. [Plaintiff's] ability to participate in such activities undermined the credibility of [his] allegations of disabling functional limitations.

[Plaintiff] has not generally received the type of medical treatment one would expect for a totally disabled individual. Although [Plaintiff] has received treatment for the allegedly disabling impairment, that treatment has been essentially routine and conservative in nature.

After his fusion surgery, [Plaintiff] was treated with oral medications, chiropractic adjustments, and physical therapy. The lack of a more aggressive treatment, surgical intervention, or even a referral to a specialist since his fusion surgery suggests [Plaintiff's] symptoms and limitations are not as severe as he alleges. The credibility of [Plaintiff's] allegations regarding the severity of his symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record.

[Plaintiff] underwent fusion surgery in July of 2010 for the alleged impairment, which certainly suggests that his/her [sic] symptoms were genuine. While that fact would normally weigh in [Plaintiff's] favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms. With time, [Plaintiff's] symptoms improved, as evidenced by the findings from physical examinations.

[Plaintiff] alleged back pain that radiated down to his lower extremities. Muscle atrophy is a common side effect of prolonged and/or chronic pain due to lack of use of a

muscle in order to avoid pain. There is no evidence of atrophy in [Plaintiff's] lower extremities. It can be inferred that although [Plaintiff] experienced some degree of pain in his back and lower extremities, the pain has not altered his use of those muscles to an extent that has resulted in atrophy.

[Plaintiff] alleged he has difficulty concentrating. The [ALJ] observed her [sic] throughout the hearing. He did not demonstrate or manifest any difficulty concentrating during the hearing. During the time when he was being questioned, he appeared to process the questions without difficulty, and to respond to the questions appropriately and without delay. He also pain attention throughout the hearing. While the Administrative Law Judges are not free to accept or reject a claimant's allegations solely on the basis of personal observations, such observations should be considered in the overall evaluation of credibility.

(AR at 25-27 (citations omitted)).

In challenging the ALJ's decision, Plaintiff alleges, inter alia, that: (1) the severity of a claimant's pain need not be substantiated by objective medical evidence; (2) Plaintiff's treatment was not "routine and conservative," as he underwent fusion surgery and expressed interest in a spinal cord stimulator trial; (3) the M.E. testified that he would not be able to perform sedentary work; and (4) the mere fact that Plaintiff engaged in household

chores, shopping, and driving does not warrant a finding that he is able to work. (Joint Stip. at 5-12). Defendant contends that the ALJ's credibility finding was proper based on Plaintiff's daily activities, the success of surgery in alleviating Plaintiff's symptoms, the lack of evidence of atrophy in Plaintiff's lower extremities, and Plaintiff's ability to concentrate and respond during the hearing. (Joint Stip. at 12-15). The Court does not agree.

The ALJ overstates the degree to which Plaintiff's daily activities are consistent with the abilities necessary to secure and maintain employment. For example, Plaintiff testified that he can generally perform household chores for twenty to thirty minutes before requiring a break lasting up to an hour. (AR 44, 47). Plaintiff also naps for up to an hour every day and drives only twice a week for about half an hour each time. (AR 49, 53). The duration and intensity of Plaintiff's activities provide very little evidence that Plaintiff can secure and maintain employment or that Plaintiff's pain is not as severe as he suggests. As the Ninth Circuit has repeatedly asserted, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to [his] overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (finding "only a scintilla" of evidence supporting ALJ's adverse credibility finding where claimant was able to go grocery shopping with assistance, walk approximately an hour in the mall, get together with friends, play cards, swim,

watch television, read, undergo physical therapy, and exercise at home); see also Reddick, 157 F.3d at 722 (activities of daily living affect a claimant's credibility "[o]nly if the level of activity [is] inconsistent with the [c]laimant's claimed limitations"; ALJ erred by "not fully accounting for the context of materials or all parts of the testimony and reports," resulting in paraphrasing of record material that was "not entirely accurate regarding the content or tone of the record").

The ALJ also erred in characterizing Plaintiff's post-surgical treatment as "routine and conservative" simply because it consisted primarily of "chiropractic adjustments, physical therapy, and oral medications." (AR 26-27). For example, Plaintiff was prescribed Norco, which contains hydrocodone, for an extended period after his surgery. (See, e.g., AR 718, 755; see also id. at 50). Hydrocodone is a narcotic pain reliever that is not generally characterized as "routine" or "conservative" treatment. See Lasane v. Colvin, 2013 WL 3121315 at *4 (C.D. Cal. 2013); Hill v. Colvin, 2013 WL 3866768 at *7 (C.D. Cal. 2013) (collecting cases). The ALJ also does not meaningfully address why Plaintiff would have contemplated spinal cord stimulation therapy[1] if his pain were well controlled with chiropractic adjustments, physical therapy, and oral medications. Although, as the ALJ notes, Plaintiff reported in February 2013 that

---

[1] Spinal cord stimulation therapy involves placing electrodes under a patient's skin "into the space on top of [his] spinal cord" and connecting them to a small current generator outside the patient's body. If an initial trial electrode reduces the patient's pain "by 50% or more," a permanent generator may be installed. Spinal Cord Stimulation, Medical Encyclopedia, U.S. National Library of Medicine, available at https://www.nlm.nih.gov/medlineplus/ency (visited May 6, 2016).

he had stopped taking medications entirely, (AR 26, 746), Plaintiff still complained of, and sought treatment for, pain during that visit, (AR 746-48).  One month later, Plaintiff reported that he was taking Norco again, but also reported that Norco caused him constipation, (AR 755), suggesting that he may have temporarily stopped taking Norco due to its side effects rather than because his pain had lessened.  At the same meeting, Plaintiff received information about spinal cord stimulation therapy which suggests that his pain was not well controlled with the treatment he was currently receiving.  See Gambrell v. Comm'r, Soc. Sec. Admin., 2015 WL 2168717 at *2 (D. Md. 2015) ("Although the ALJ accurately stated that . . . certain medications provided 'some' and/or 'significant' pain relief, the ALJ completely ignored . . . simultaneous statements documenting soreness, weakness, tenderness, worsening pain, current pain at 7/10 and 8/10, discomfort with certain movements, and failed conservative treatments.  Temporary relief of pain from medications, even if significant, does not necessarily equate with adequate control of pain. If [claimant's] pain was controlled with medications, it is unclear why her pain management physician would have continued to perform injections and hardware blocks, or why he would recommend a spinal cord stimulation trial.").

The ALJ also erred in relying on the absence of muscle atrophy to support his credibility finding.  (AR 27).  "[W]hile an [ALJ] is free to resolve issue of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." McBrayer v. Sec'y of Health &

15

Human Servs., 712 F.2d 795, 799 (2d Cir. 1983); see also Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ improperly relied on his interpretation of Plaintiff's testimony over medical opinions); Gonzalez Perez v. Sec'y of Health & Human Servs., 812 F.2d 747, 749 (1st Cir. 1987) ("The ALJ may not substitute his own layman's opinion for the findings and opinion of a physician....").

Here, although the ALJ cited medical evidence indicating that Plaintiff's strength and muscle mass were normal, (AR 696-700), the ALJ cited no evidence that the absence of atrophy was inconsistent with Plaintiff's pain levels, particularly given that Plaintiff admitted that he was not confined to his bed or otherwise unable to walk or move.  Compare Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ permissibly discounted claimant's complaint that her pain required her to "lie in a fetal position all day" because she "did not exhibit muscular atrophy or any other physical signs of an inactive, totally incapacitated individual"); see also Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 665 (9th Cir. 2010) (ALJ's reliance on lack of muscle atrophy inappropriate where "no medical evidence suggest[ed] that high inactivity levels necessarily lead to muscle atrophy"); Winans v. Colvin, 2014 WL 4259471 at *6 (D. Ariz. 2014) (an ALJ's observation regarding lack of atrophy was "consistent with the fact that several physicians observed that Plaintiff had no muscle weakness;" nevertheless, ALJ's reliance on his own observations regarding "the significance of the absence of those findings" was error).

The ALJ also rejected Plaintiff's statements that he had "difficulty concentrating" based on the ALJ's own observations of Plaintiff's conduct during the hearing. (AR 27). The Ninth Circuit has repeatedly condemned so-called "sit and squirm" jurisprudence. Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985) ("Denial of benefits cannot be based on the ALJ's observation of [the claimant], when [the claimant's] statements . . . are supported by objective evidence."). However, inclusion of an ALJ's personal observations does not necessarily render the decision improper. See Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1989). Here, the ALJ's observations during the twenty-six minute hearing, (AR 38, 58), do not justify an adverse credibility finding, particularly where Plaintiff's testimony suggests that Plaintiff's symptoms wax and wane. (AR 45-47); see Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984) ("The fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible."). Additionally, Plaintiff asked to stand and stretch during the hearing, (AR 52), which, if it alleviated his pain, would likely improve his ability to concentrate.

Finally, to the extent that Plaintiff's pain levels were not substantiated by medical evidence, this finding does not provide an appropriate basis upon which to affirm in the absence of other appropriate reasons to find Plaintiff's testimony not fully credible. Light, 119 F.3d at 792-793 ("[A] finding that the claimant lacks

17

credibility cannot be premised wholly on a lack of medical support for the severity of his pain.").

## B. The ALJ's Error Was Not Harmless

"[H]armless error principles apply in the Social Security . . . context." Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006)). Generally, "an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" Id. (citing Carmickle v. Comm'r Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)).

The Court cannot conclude that the ALJ's errors were harmless. The limiting effects of Plaintiff's pain are directly relevant to assessing his RFC. A claimant's RFC "may be the most critical finding contributing to the final . . . decision about disability." See McCawley v. Astrue, 423 F. App'x 687, 689 (9th Cir. 2011) (quoting SSR 96—5p). Here, Plaintiff's RFC was central to the ALJ's determination that there was work that he could perform despite his limitations. (AR 29-30). Because the Court cannot determine that the ALJ's errors are "inconsequential to the ultimate disability determination," the errors cannot be deemed harmless. See Carmickle, 466 F.3d at 885.

## C. Remand Is Warranted

The decision whether to remand for further proceedings or order

18

an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman, 211 F.3d at 1179-81.

    Here, the Court remands because the ALJ did not properly analyze Plaintiff's credibility. The record does not establish that the ALJ would necessarily be required to find Plaintiff disabled if this deficiency were remedied. Remand is therefore appropriate.

    The Court has not reached issues not discussed supra except to determine that reversal with a directive for the immediate payment of benefits would be inappropriate at this time. In addition to the issues addressed in this order, the ALJ should consider on remand any other issues raised by Plaintiff, if necessary.

\\
\\
\\
\\
\\
\\

## VI. CONCLUSION

For the foregoing reasons, the decision of the Administrative Law Judge is VACATED, and the matter is REMANDED, without benefits, for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 31, 2016

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE